(Docket Nos. 32, 33, 36, 71, 72)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
MICHAEL ADELMAN, et al.,            :
                                    :
            Plaintiffs,             :     Civil No. 06-6007 (RBK)
                                    :
      v.                            :     **OPINION**
                                    :
MICHAEL PETER, et al.               :
                                    :
            Defendants.             :
_____ :

**KUGLER**, United States District Judge:

Before the Court is a motion by defendants Michael Peter and Joseph Annecca[1] ("Defendants") to dismiss the complaint of plaintiffs Michael Adelman, Joseph Crump, Axiom Entertainment Corporation, and Dynamic Publishing and Distribution, LLC ("Plaintiffs") for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Additionally before the Court are a motion by Defendants to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) or in the alternative, to transfer the case to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a), another motion to change venue, as well as motions by both Defendants and Plaintiffs for sanctions. For the reasons stated below, the Court finds it does not have personal jurisdiction over Defendants and will grant Defendants' motion to transfer pursuant to 28 U.S.C. § 1406(a). The Court will deny all other motions.

---

[1] Plaintiffs' papers use an alternate spelling, "Anneca"; however, the Court adopts the spelling used by Defendants.

I.  **BACKGROUND**

Plaintiff Crump met Defendant Peter in 1991 while both were serving prison sentences in the Federal Correctional Institution at Fort Dix, New Jersey.  Both men had worked for many years in the adult entertainment industry – Crump, owning and operating more than fifty adult bookstores, and Peter, pioneering the concept of the upscale gentlemen's club. (Crump Aff. in Opp'n to Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction or to Change Venue (hereinafter "Crump. Aff.") ¶ 5.)  While in prison, they discussed the possibility of combining their expertise in a future business venture. (Id. ¶ 6.)  Upon release from prison, Crump returned to his home in New Jersey and Peter to his in Florida.

In June 2000, Crump contacted Peter about an investment opportunity. (Pls.' Reply Stmt. of Facts ¶ 1.)  Crump had located a site in Laredo, Texas where he proposed opening an adult entertainment center. (Crump Stmt. of Facts ¶ 11.)  Peter expressed interest, and in the months that followed, the two negotiated the terms of the business venture. (Id. ¶¶ 12-13.)  Most of these communications occurred during telephone conversations between Crump in New Jersey and Peter in Florida. (Id. at ¶ 10.)  Each located an additional investor: Crump recruited Plaintiff Adelman from Pennsylvania, who brought technical expertise to the venture; and Peter recruited Defendant Annecca, who lived in Illinois and was willing to invest money to get the operation off the ground. (Id. ¶ 13.)  During this period of negotiation, Plaintiffs allege that Crump spoke with Annecca individually on the phone once and had numerous phone conferences with Peter, some of which also included Annecca. (Crump Aff. ¶¶ 9, 10.)

An agreement among the four investors was reached at a meeting in Laredo, Texas. (Defs.' Stmt. Facts ¶ 3.)  They decided to create a company called Dynamic Publishing and

Distribution LLC ("Dynamic") to purchase the necessary real estate and a company called Axiom Entertainment Corporation ("Axiom") to lease the premises and own the adult entertainment venue.  The parties hired Texas lawyers to incorporate Axiom in Texas, where it was also to have its principle and exclusive place of business. (Defs.' Reply Stmt. of Facts ¶ 5.)  Dynamic's articles of incorporation designated Adelman as its sole member, and Peter's Florida lawyers filed the certificate of formation in Delaware. (Id. at  ¶ 4.)  The ownership interests in Dynamic, Axiom, and their successor entities are at the heart of this suit – Defendants allege the parties agreed to equal ownership, whereas Plaintiffs maintain Defendants merely possessed an option to buy half interest, which they never exercised.  Nevertheless, Peter and Annecca loaned Dynamic funds to purchase the real estate, apparently in exchange for a "demand promissory note" and an option agreement entitling Peter to buy half interest in Dynamic. (Crump Opp'n Exs. 6, 7.)  The parties selected Florida law to govern any disputes arising from the option agreement.  In or around October 2002, the parties met again in Laredo to execute Dynamic's operating agreement (to be governed by Delaware law) and Axiom's shareholders' agreement. (Defs.' Reply Stmt. of Facts ¶ 6; Peter Aff. in Support of Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction Ex. K at 24.)

      These agreements culminated in Crump and Adelman opening an adult bookstore called "City Limits" in Laredo on or about July 4, 2002. (Defs.' Reply Stmt. of Facts ¶ 6.)  Adelman conducted the day-to-day operations, and Crump states that he managed the business from New Jersey. (Crump Stmt. of Facts ¶ 22.)  Defendants dispute that Crump remained in New Jersey and contend that, in fact, Crump moved with his family to Texas to help run City Limits. (Defs.' Reply Stmt. of Facts ¶ 7.)  Crump, on the other hand, insists that he was in regular contact by

telephone from New Jersey with both Peter and Annecca concerning City Limits. (Id.) Many of these communications were necessitated by the zoning litigation that plagued Axiom during its first three years of operation. (Id. ¶¶ 23, 24, 26; Crump Aff. ¶ 14.)

Sometime during the summer of 2003, Defendants maintain that Crump and Adelman had a falling out, which prompted Crump to leave Laredo and move back to New Jersey. (Defs.' Reply Stmt. of Facts ¶ 7.) Plaintiffs, of course, assert that Crump never moved to Texas at all. (Crump Aff. ¶ 16.) In any case, Plaintiffs allege subsequent phone contacts from Peter and Annecca to Crump in New Jersey concerning the ownership interests of the Axiom and Dynamic going forward. (Id.) Additionally, Crump proffers a letter dated January 10, 2006 from Peter's attorney in Florida to Crump in New Jersey regarding Crump's departure from the businesses and offering to create a trust for Crump's daughter from ten percent of the businesses' profits in recognition of his efforts on behalf of the venture. (Crump Opp'n Ex. 8.) The record does not suggest that such a trust was ever created.

Adelman initiated this suit for declaratory relief on December 14, 2006. Initially, he named Crump as a defendant in the action, but an amended complaint instead included Crump as a co-plaintiff. Subsequently, Peter and Annecca filed suit against Adelman, Crump, Dynamic, and Axiom, as well as Dynamic's successor LLC, and a City Limits employee for breach of contract, among numerous other claims. Defendants challenge this Court's exercise of personal jurisdiction over them, and ask this Court to dismiss the case or transfer it to the Southern District of Texas due to improper venue. Both Plaintiffs filed oppositions, and Defendants replied.

## II.     PERSONAL JURISDICTION

According to the Amended Complaint, Plaintiff Adelman is a citizen of Pennsylvania; Plaintiff Crump is a citizen of New Jersey; Plaintiff Axiom is a citizen of Texas; Plaintiff Dynamic is a citizen of Pennsylvania and New Jersey; Defendant Peter is a citizen of Florida; and Defendant Annecca is a citizen of Illinois.  In Crump's opposition, he asserts that this Court has jurisdiction over Peter based on Peter's time in New Jersey while incarcerated at Fort Dix during the 1990s and the hundreds of telephone calls Peter and Annecca engaged in with Crump while Crump was in New Jersey.  Crump asserts that the specific transaction giving rise to this litigation was discussed both during Peter's incarceration and the numerous telephone calls.  Crump also maintains that this Court can exercise general jurisdiction over Peter because Peter advertises in New Jersey through a website for his gentlemen's club in Fort Lauderdale, Florida.  In Adelman's opposition, he additionally argues that Defendants are asserting rights to Crump's property in the state of New Jersey.  Defendants argue that these contacts are insufficient to establish personal jurisdiction over them.  Moreover, Defendants contend that even if the Court finds that Defendants have minimum contacts with New Jersey, this Court's exercise of personal jurisdiction over Defendant would not comport with "fair play and substantial justice."

Once a defendant raises the defense of lack of personal jurisdiction, the burden shifts to the plaintiff to prove by a preponderance of evidence facts sufficient to establish personal jurisdiction.  Carteret Savs. Bank F.A. v. Shushan, 954 F.2d 141, 146 (3d Cir. 1992).  To exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry.  First, the court must apply the relevant state long-arm statute to see if it permits the exercise of personal jurisdiction.  Second, the court must apply the principles of due

5

process.  Imo Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998).  In New Jersey, this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process, and so New Jersey courts look to federal law for the interpretation of the limits on personal jurisdiction.  Id.

Personal jurisdiction under the Due Process Clause depends on the "relationship among the defendant, the forum, and the litigation."  Imo Indus., 155 F.3d at 259.  Physical presence within the forum is not required; instead, the plaintiff must show that the defendant purposefully directed his activities toward the residents of the forum state, or otherwise "purposefully availed [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985); Hanson v. Denckla, 357 U.S. 235, 253 (1958)).

Personal jurisdiction can be either in the form of "specific jurisdiction" or "general jurisdiction."  If the plaintiff's cause of action relates to or arises out of the defendant's contacts with the forum, the court is said to exercise "specific jurisdiction."  Id.  If the plaintiff's claim does not arise out of the defendant's contacts with the forum, the court is said to exercise "general jurisdiction"; under general jurisdiction, the contacts must be shown to be "continuous and systematic."  Id. at 259 n.2.

### A. Specific Jurisdiction

For a court to properly exercise specific jurisdiction under the Due Process Clause, a plaintiff must satisfy a two-part test.  First, a plaintiff must show that the defendant has constitutionally sufficient "minimum contacts" with the forum.  Second, the court must determine in its discretion that to extend jurisdiction "would comport with 'traditional notions of

fair play and substantial justice.'" Imo Indus., 155 F.3d at 259 (citing Burger King Corp., 471 U.S. at 474; Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)).

Plaintiffs assert that Defendants "purposefully directed" their activities toward the forum state. Specifically, they allege that Peter reached out to New Jersey by living there while imprisoned, engaging in hundreds of telephone conversations with Crump regarding their business venture, and having his attorney send a letter into the state offering to create a trust for Crump's daughter. The contacts Plaintiffs allege between Defendant Annecca and the forum state are even weaker, consisting exclusively of telephone conversations relating to Dynamic and Axiom with Crump.

In Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co., 75 F.3d 147 (3d Cir. 1996), the Third Circuit held that a nonresident defendant did not possess minimum contacts based solely on the mailing to the forum state of one of two signed contracts at issue in the litigation, telephone calls placed to the forum state in the course of negotiating the second contract, and other related correspondence mailed to the forum. Id. at 149, 152. That case involved a forum-state seller suing a nonresident buyer over contracts for a particular product. Id. at 148. The court noted that the plaintiff's representatives had traveled to the defendant's state to solicit the initial contract and to negotiate its renewal, and that all invoicing was sent from and paid to the defendant's branch office outside the forum. Id. at 149. In reaching this conclusion, the court stated, "informational communications in furtherance of [a contract between a resident and a nonresident] does [sic] not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant]." Id. at 152.

On the other hand, the Third Circuit did find minimum contacts based on mail and

telephone communications to the forum in a contract claim in Remick v. Manfredy. 238 F.3d at 256. In Remick, the nonresident defendant had initiated contact via telephone with the plaintiff, a lawyer in the forum state. Id. The call eventually resulted in an attorney-client relationship and a fee agreement, which stated that its formality was required by the forum state's Rules of Professional Conduct. Id. In finding minimum contacts, the court cited the benefits the defendant received from the forum state's laws pursuant to the agreement. The court also noted that the defendant returned the signed fee agreement to the forum state, made at least one payment there, and that most of the services that were the subject of the agreement were performed there. Id. In addition, the court found that there were "repeated informational communications during the course of the contractual relationship between [the parties] with [the forum plaintiff at his office in the forum state], including the final communication," which was the defendant's termination letter. Id. (citing Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir.1993) ("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction.")).

In this case, however, Plaintiffs have not established that minimum contacts exist between either Peter or Annecca and the forum state of New Jersey. The telephone calls to and from Peter to Crump regarding the agreements at issue, the single letter from Peter's attorney to Crump after Crump's involvement with City Limits had ended, and Peter's time in New Jersey while in prison are not sufficient contacts to warrant this Court's exercise of jurisdiction over Peter. As for Annecca, the contacts are even more spare, consisting only of telephone communication, and admittedly far less than that with Peter. (Crump Aff. ¶ 14.) None of the contested agreements were reached, carried out, or breached in New Jersey; all of these events

occurred in Texas or elsewhere.  The parties met in Texas to investigate real estate and the Laredo market; they met there again to reach a final agreement for their enterprise; and they returned there a third time to execute the operating and shareholders' agreements.

Telephone communications in furtherance of Dynamic and Axiom's creation and management in Texas do not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over Defendants in New Jersey.  The content of the telephone communications between Crump and Defendants concerned an operation that had no relationship to New Jersey, and thus the calls do not reflect the purposeful direction of activities within the forum.  See Lebel v. Everglades Marine, Inc., 558 A.2d 1252, 1256 (N.J. 1989) (finding transmittal of messages by mail or telephone not a critical factor in minimum contacts analysis unless their nature and content relates to activity in the forum state).  Here, the goal of the communications was an enterprise located in Texas that was to conduct its business exclusively within that state.  This is different from the situation in Remick where the essence of the parties' contract was work performed in the forum and an attorney's counseling of his client via telephone.  Also, Plaintiffs here fail to allege the kinds of supplemental contacts needed for jurisdiction: Defendants never willingly visited New Jersey, they did not select New Jersey law to govern their contracts, no payments were owed or paid to New Jersey, and no sales were made or contemplated there.  See Vetrotex, 75 F.3d at 152 (distinguishing cases that included contacts in addition to mail and telephone communications, such as solicitation by nonresident defendant, payment by defendant in forum, and extensive post-sale contacts in forum); GMAC Real Estate, LLC v. Gate City Real Estate, No. Civ. A. 05-2253, 2005 WL 2656678, at *3 (D.N.J. Oct. 18, 2005) (stating that other factors, such as visits to forum, in addition to mail and telephone

communications sent by a defendant to forum are typically necessary to support jurisdiction). Compare Remick, 238 F.3d at 256 (stating plaintiff's representation that forum state law required formal fee agreement evidenced benefit afforded nonresident defendant).  Additionally, many of the telephone calls on which Plaintiffs rely related not to the dispute before this Court, but to the zoning litigation in Texas involving Axiom and thus cannot be included in a specific jurisdiction analysis.

Similarly, the time Peter spent in prison and the letter from Peter's lawyer do not sufficiently bolster Peter's contacts with New Jersey.  Plaintiffs suggest that the agreements at issue in this suit originated in New Jersey when Crump and Peter discussed the possibility of pursuing a joint venture in the adult entertainment business; however, the evidence does not demonstrate that their conversations involved any specificity as to the arrangement, such as its location or partners.  Thus, New Jersey cannot fairly be said to be the place of origination of the contracts at issue.  Moreover, a prisoner serving a sentence in a state to which he has no other affiliation hardly qualifies as purposefully availing himself of the forum state.  Presumably, it was not Peter's decision but that of the Federal Bureau of Prisons that resulted in his presence in New Jersey during the 1990s.

Lastly, Crump attaches a 2006 letter in which Peter's lawyer wrote him in New Jersey, acknowledging that he had ceased to be involved in City Limits' management and offering to recognize his contribution to the business by creating a trust for Crump's daughter from a portion of its profits.  Plaintiffs have presented no evidence that such a trust was ever created, however. As such, the Court is not persuaded that the letter reflects Peter purposefully availing himself of New Jersey's benefits.  Also, Adelman's assertion that property in New Jersey is at issue in the

present suit is unsupported by the record before the Court.

Because Plaintiffs have not carried their burden of showing minimum contacts between Defendants and the state of New Jersey, this Court does not need to proceed to the second part of the analysis, whether the exercise of that jurisdiction would "comport with fair play and substantial justice." See Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004) (internal quotations and citations omitted).

**B.     General Jurisdiction**

As an alternative basis for jurisdiction, Plaintiffs argue that Peter's website advertising a gentlemen's club he operates in Fort Lauderdale, Florida gives this Court general jurisdiction over him. Defendants counter that the website does not evince sufficient contacts for such jurisdiction, and the Court agrees.

Courts may exercise general personal jurisdiction when a defendant's contacts with the forum arise from activities outside the scope of the instant action. The Court can exercise general jurisdiction over a defendant only if the defendant is found to have "continuous and systematic contacts with the forum state." Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001). This inquiry has been characterized as requiring the plaintiff to "show significantly more than minimum contacts." Provident Nat'l Bank v. Cal. Fed. Savs. & Loan Assoc., 819 F.2d 434, 437 (3d Cir.1987).

It is possible for a website maintained by a nonresident defendant to give rise to general jurisdiction in the forum state. Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003). Websites fall into one of three categories depending on the nature and quality of the defendant's internet activity: "(1) interactive sites used to conduct business over the Web; (2)

11

semi-interactive sites allowing the exchange of information with a host computer; and (3) passive sites allowing access to information but not enabling the exchange of information with a host computer." Machulsky v. Hall, 210 F. Supp. 2d 531, 538-39 (D.N.J. 2002). Passive websites and those that are not commercially interactive – that is, capable of executing contracts over the Internet – do not generate sufficient contacts for an exercise of general jurisdiction. Ameripay, LLC v. Ameripay Payroll, Ltd., 334 F. Supp. 2d 629, 635 (D.N.J. 2004). As for websites that are commercially interactive, jurisdiction depends on "the level of interactivity" and "the commercial nature of the exchange that occurs on the site." Id. For these websites, Courts look to whether the defendant purposely availed himself of the forum "by targeting [his] website there, knowingly conducting business with forum residents through the website, or by non-internet contacts, such as communications, business trips, or contracts in the forum." Id. (citing Toys "R" Us, 318 F.3d at 452-55).

    Peter's website is not commercially interactive and thus does not subject him to the jurisdiction of this Court. It merely advertises the club's existence and allows would-be patrons of the club to make reservations and sign up for an e-mail list, see Pure Platinum & Solid Gold, http://www.pureplantinumsolidgold.com (last visited Dec. 13, 2007); therefore, it is not commercially interactive. See Snyder v. Dolphin Encounters Ltd., 235 F. Supp. 2d 433, 440 (E.D. Pa. 2002) (finding insufficient interactivity for general jurisdiction where defendant's websites enabled on-site reservations, souvenir orders, correspondence with management personnel, as well as question and answer forum); Molnlycke Health Care AB v. Dumex Med. Surgical Prods., Ltd., 64 F. Supp. 2d 448, 451 (E.D. Pa. 1999) (rejecting rule that mere existence of website through which customers can order products is by itself enough to establish general

jurisdiction since such a finding "would effectively hold that any corporation with such a website is subject to general jurisdiction in any state"). Significantly, Plaintiffs have adduced no evidence showing anyone from New Jersey has ever visited Peter's website. See Snyder, 235 F. Supp. 2d at 440 (deciding court lacked jurisdiction even where evidence showed nearly 1500 forum state IP addresses had contacted defendant's websites). As a result, this Court cannot exercise general personal jurisdiction over Defendants.[2]

### III.    TRANSFER

On the same day they filed their motion to dismiss for lack of personal jurisdiction, Defendants filed a motion to dismiss or transfer for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). Approximately two months later, Defendants followed up with a motion that asks for transfer of venue pursuant to 28 U.S.C. § 1404, subject to Defendants' motion to dismiss, or in the alternative, transfer of venue pursuant to 28 U.S.C. § 1406(a) and for dismissal for lack of personal jurisdiction. Both motions put forth similar arguments and ask this Court, if it is unwilling to dismiss this action altogether, to transfer it to the Southern District of Texas. Plaintiffs oppose both these motions, arguing that venue is proper in New Jersey.

---

[2] Following Defendants' reply, Plaintiffs wrote letters to the Court asking that it consider two late submissions apparently offered in an attempt to bolster their argument for general jurisdiction. The materials consist of two documents and an affidavit from Adelman, stating that Peter gave those two documents to him. Even were the Court to consider these documents, however, the outcome as to general jurisdiction would be no different. The documents contain the words "M.J. Peter" and "Pure Platinum Hollywood." Also, one includes "Atlantic City, NJ" in a list of cities with no explanation of their significance, and the other states, "coming soon" and then lists six cities, including Atlantic City. The Court can glean no actual contacts between Peter and New Jersey from these submissions, let alone the "continuous and systematic contacts" required for general jurisdiction. Critically, Plaintiffs have alleged nowhere that Peter did in fact operate a business in New Jersey.

### A.  Applicable Legal Standard

When a district court determines it lacks personal jurisdiction, it can transfer the case to a district in which the case could have been brought originally.  Gehling v. St. George's Sch. of Med., Ltd., 773 F.2d 539, 544 (3d Cir. 1985).  The transfer provision at 28 U.S.C. § 1406(a) applies when the court lacks personal jurisdiction.  See Lafferty v. Riel, 495 F.3d 72, 77 (3d Cir. 2007) ("Section 1406(a) comes into play where plaintiffs file suit in an improper forum"(citations omitted)).  Section 1406(a) directs courts to "dismiss, or if it be in the interest of justice, transfer" cases where venue is improper.  Courts typically use § 1406(a) as an equitable remedy so that a plaintiff can avoid having his case dismissed altogether due to jurisdictional problems.  Carteret Sav. Bank, FA v. Shushan, 919 F.2d 225, 231-232 (3d Cir. 1990).

In Carteret Savings Bank, the Third Circuit reviewed a district court's order to transfer in a case over which the district court had decided it lacked personal jurisdiction.  Id. at 227.  There, the plaintiff asked the district court to either amend its order to vacate the transfer of venue or to certify the question of personal jurisdiction for immediate appeal.  Id.  The district court denied both requests, and the plaintiff filed a petition for mandamus with the Third Circuit asking it to vacate and set aside the district court's order.  Id. at 228.  The Third Circuit issued an order directing the district court to vacate the portion of its order transferring venue, stating that – in what it acknowledged was an "unusual context" – it would not compel the plaintiff to accept transfer pursuant to § 1406(a) over dismissal.  Id. at 231-32.

Here, while Plaintiffs have filed opposition briefs to Defendants' motions asserting improper venue, they have not asserted that they would prefer dismissal to transfer.  They have not addressed the result they desire if this Court found for Defendants on the question of personal

14

jurisdiction. Accordingly, Plaintiffs' position does not appear to be the same "unusual context" addressed in Carteret, and this Court will transfer the case to the Southern District of Texas, provided it could have originally been brought there.

### B. Whether Plaintiffs Could Have Brought this Case in the Southern District of Texas

In their motions, Defendants offer the Southern District of Texas as a superior forum for this case. As such, they have expressed willingness to submit to the exercise of jurisdiction by that Court. Likewise, venue is proper there. In a civil action in federal court based on diversity jurisdiction, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). "The 'substantial part of the events' standard 'is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute.'" Id. (citing Cottman, 36 F.3d at 294).

The Court concludes that venue is proper in the Southern District of Texas because a "substantial part" of the events giving rise to the claim occurred in that District. The business at the center of this controversy is located there, and all the significant events relating to the business occurred there. As a result, venue is proper, and this Court will transfer this case to the Southern District of Texas pursuant to 28 U.S.C. § 1406(a).

### IV. SANCTIONS

Both Plaintiff Adelman and Defendants have filed motions for sanctions against each other. The Supreme Court has recognized the inherent power of courts to "assess attorneys' fees . . . when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive

reasons.'" Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59 (1975) (citation omitted). Courts may also award costs and fees pursuant to 28 U.S.C. § 1927 where an attorney's conduct "multiplies the proceedings in any case unreasonably and vexatiously." The primary purpose for imposing § 1927 sanctions is to deter intentional and unnecessary delay in litigation. Zuk v. E. Pa. Psychiatric Inst. of Med. Coll. of Pa., 103 F.3d 294, 297 (3d Cir. 1996). Additionally, Federal Rule of Civil Procedure 11 enables a court to sanction a lawyer, law firm, or party for "presenting to the court a pleading, written motion, or other paper" for an improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)-(c). Rule 11's "safe harbor" provision, however, provides that a party seeking sanctions must serve the motion papers on his adversary, but not file the motion for twenty-one days after service to give his adversary an opportunity to withdraw the offending pleading or motion. See Fed. R. Civ. P. 11(c)(1)(A).

      A.      **Plaintiff Adelman's Motion for Sanctions**

Adelman's motion seeks attorneys' fees expended responding to Defendants' ex parte order for accounting obtained in Texas state court on February 7, 2007. Adelman argues that Defendants intentionally misled the state court judge from whom they obtained the order by not informing him of the hearing before this Court on Plaintiffs' motion for an order to show cause scheduled for February 15, 2007. Defendants respond that it was not improper for them to seek relief in state court. Adelman requests sanctions primarily under 28 U.S.C. § 1927.

This Court, in its broad discretion, declines to order payment of Adelman's costs and fees. Adelman seeks sanctions based on an alleged misrepresentation before a Texas court, and that court is better able to handle any sanctions that should be imposed.

### B. Defendants' Motion for Sanctions

Defendants' motion asks for sanctions pursuant to Rule 11, 28 U.S.C. § 1927, and its own inherent power. Defendants allege that Plaintiffs filed suit in New Jersey, realizing venue was improper, and that they colluded to create venue by initially naming Crump as a defendant and later switching him to a plaintiff in an amended complaint. Defendants argue further that through these actions and Adelman's counsel's "baseless" motion for sanctions, Plaintiffs' lawyers have multiplied the proceedings and increased the cost of the litigation in contravention of 28 U.S.C. § 1927.

Defendants' motion is not in compliance with the "safe harbor" provision of Rule 11. In their oppositions, both Plaintiffs state that they were not served with Defendants' motion twenty-one days before it was filed. Furthermore, Defendants did not provide the Court with any evidence of service in accordance with Rule 11(c)(1)(A). Therefore, the Court cannot determine if Defendants have complied with the safe harbor provision of Rule 11, and it will not award sanctions to them on that basis.

Additionally, whatever its merits, Defendants' response to Adelman's motion for sanctions necessitated only four pages of legal argument in response. Thus, it did not significantly "multipl[y] the proceedings." See 28 U.S.C. § 1927. Moreover, the Court declines to grant relief, since it was not a foregone conclusion that Plaintiffs' choice of forum would not withstand Defendants' challenges to personal jurisdiction and venue.

### V. CONCLUSION

For the reasons stated above, the Court finds it does not have personal jurisdiction over Defendants. As such, the Court will deny Defendants' motions to dismiss but grant their motion

to transfer.  Additionally, this Court will deny Adelman's and Defendants' motion for sanctions.


Dated: 12/21/07                              s/ Robert B. Kugler
                                             ROBERT B. KUGLER
                                             United States District Judge